IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KEEMIT HAND, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:01-CR-0513-CAP-LTW-4 |
| | : | |
| UNITED SATES OF AMERICA, | : | CIVIL ACTION NO. |
|    Respondent. | : | 1:20-CV-0130-CAP-LTW |

## ORDER AND FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Keemit Hand's counselled motion under 28 U.S.C. § 2255 (Doc. 394) and motion for discovery (Doc. 397), the government's response thereto (Doc. 399), Hand's reply (Doc. 402), and the government's reply (Doc. 403). For the reasons that follow, Hand's motion for discovery [397] is **DENIED**, and the undersigned **RECOMMENDS** that his § 2255 motion [394] be **DENIED**.

**I.  Procedural History**

A federal grand jury in the Northern District of Georgia returned an indictment against Hand and co-defendants Corey Walker, George Oliver, Vincent E. Johnson, Jay Cucco, and J.B. Cocco, charging them with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii), and possession with

intent to distribute at least 5 kilograms of cocaine, in violation of §§ 841(a)(1) and (b)(1)(A)(ii) and 18 U.S.C. § 2.  (Doc. 1.)  Hand, represented by retained counsel Beverly Taylor, and Oliver proceeded to a three-day jury trial.  (Docs. 380-82.)

The evidence presented at trial showed that, on June 13, 2001, law enforcement raided a house belonging to Eric Staples' mother.  (Doc. 380-2 at 36-37.)  Staples, who was present during the raid, agreed to cooperate with the government and described the illegal drug operation as follows.  (*Id.*)  The customary method of delivery was for a tractor-trailer to drop off either marijuana or cocaine at Metro Materials, a fenced-in gravel yard on the outskirts of Atlanta.  (*Id.* at 43-56; Doc. 380-1 at 52; Doc. 381-1 at 86-87.)  Walker then took possession of the drugs, and Oliver picked them up for delivery to a location where they were "broken down" into smaller packets for distribution and storage.  (Doc. 380-2 at 43-56; Doc. 381-1 at 10-13, 86-90; Doc. 381-2 at 23.)

During the course of this conspiracy, Hand transported marijuana for Oliver, assisted him in breaking down the large bundles of marijuana into smaller amounts for distribution, and stored marijuana for Oliver.  (Doc. 380-2 at 52; Doc. 381-1 at 10-13; Doc. 381-2 at 31-32.)  In fact, Hand owed Oliver money because his cousin once stole marijuana that Hand was storing for Oliver.  (Doc. 380-2 at 58; Doc. 381-2 at 31-32.)

Staples told the government that his organization would soon receive a load of drugs and arranged for the cocaine shipment to be delivered to Metro Materials on June 16, 2001. (Doc. 380-1 at 51-54; Doc. 380-2 at 38.) Hand agreed to assist Oliver with this drug deal in order to pay off the debt he owed for the drugs his cousin stole. (Doc. 381-2 at 31-32.) The government arranged to conduct surveillance in the area on that date and followed Hand's green Nissan Maxima and Johnson's blue Isuzu Rodeo, as those vehicles appeared to be conducting counter-surveillance. (Doc. 380-1 at 51-53, Doc. 380-2 at 6-11; Doc. 381-1 at 45-48, 75-80.) At about 5:00 p.m., a tractor-trailer delivered about 150 kilograms of cocaine to Metro Materials. (Doc. 380-1 at 54-55; Doc. 381 at 63; Doc. 381-2 at 63.) Meanwhile, Staples called Johnson and told him to go to the Amoco station to act as a lookout. (Doc. 381-2 at 26.)

About an hour after the drugs were delivered, Hand and Oliver arrived in the area, but Oliver became suspicious that some of the vehicles in the area were police officers. (Doc. 380-1 at 55-56; Doc. 381-2 at 27.) While Johnson waited at the Amoco, he received a call from Staples' brother, Chris Person, asking whether he saw a black Expedition in the parking lot that was, in fact, driven by Officer David Noe. (Doc. 380-1 at 55; Doc. 380-2 at 39.) Ten minutes later, Oliver called to ask whether the black vehicle had left, and when Johnson replied that it had, Oliver

said that it was following him. (Doc. 381-2 at 27.) Shortly after this, Oliver instructed Johnson to meet him on a side street leading to Metro Materials because he had decided that Hand should wait outside the entrance in his vehicle as if he had car trouble, while Johnson and Oliver picked up the drugs in Johnson's vehicle. (*Id.* at 27-29.) Johnson would then get in Hand's vehicle, so that anyone following would still see two black men in the car. (*Id.* at 28.) Hand was present during this conversation between Johnson and Oliver and agreed to the plan. (*Id.* at 28-29.)

After the cocaine was loaded into Johnson's vehicle at approximately 7:05 p.m., police arrived and blocked the exit, and Oliver told Johnson to get out and run, which he did, but the police caught him immediately. (Doc. 380-1 at 59; Doc. 381-1 at 81-83; Doc. 381-2 at 29-30.) Meanwhile, Hand was pulled off to the side of the road down the street from Metro Materials and was standing by his open trunk looking in the direction of Metro Materials. (Doc. 381-1 at 51-54.) Detective Ty Hayes passed Hand, who was looking into his trunk, but when Detective Hayes turned around, Hand appeared to see the detective looking at him, closed his trunk, and began driving away. (*Id.* at 52-56.) Detective Hayes followed as Hand drove erratically, and Officer Noe eventually helped Detective Hayes stop Hand's car and arrest him. (*Id.* at 59; Doc. 380-2 at 1; Doc. 381-1 at 56-57.) When Detective Hayes entered Hand's car, which was still on the road, to move it to a parking lot,

4

he saw Hand's cell phone, seized it, and turned it over to Officer Noe.  (Doc. 381-1 at 57.)  The cell phone revealed that Hand had called Oliver's telephone four times between 7:16 and 7:23 p.m.  (Doc. 382 at 27-30.)

On April 5, 2002, the jury found Hand and Oliver guilty on both counts and that each offense involved at least five kilograms of cocaine.  (Doc. 382-4 at 20, 22.)  When Hand failed to appear for sentencing on July 23, 2002, the Court issued a bench warrant.  (Docket Entry dated 07/3/2002.)  Nearly fifteen years later, Hand was arrested in Jamaica and extradited to the United States.  (Doc. 339.)  On October 19, 2017, the Court entered judgment imposing a total sentence of 188 months of imprisonment.  (Doc. 364.)  Retained counsel L. Burton Finlayson represented petitioner at sentencing.  (Docs. 338; 363.)

Hand, still represented by Finlayson, appealed, arguing that: (1) the Court abused its discretion by admitting photographs and testimony about marijuana seized on June 18, 2001; (2) the Court erred in admitting Hand's cellphone and its contents, which were seized without a warrant; (3) the evidence was insufficient to support his convictions; (4) the Court erred by denying him a mitigating role adjustment; (5) the Court erred by applying a two-level firearm enhancement; and (6) his sentence was procedurally and substantively unreasonable.  Br. of Appellant at 37-76 (May 14, 2018), *United States v. Hand*, 758 F. App'x 838 (11th Cir. 2019)

5

(per curiam) (No. 17-14740-H), 2018 WL 2234214, at *19-58.  The United States Court of Appeals for the Eleventh Circuit granted the government's motion to dismiss Hand's challenges to his convictions pursuant to the fugitive disentitlement doctrine but allowed him to proceed with the challenges to his sentence.  (Doc. 399-3 at 2.)  On January 11, 2019, the Eleventh Circuit affirmed Hand's sentence.  *Hand*, 758 F. App'x at 841.

Hand, now represented by Sydney R. Strickland, timely filed this §2255 motion, arguing that Taylor provided him ineffective assistance by failing to (1) convey a plea offer made by the government prior to trial and (2) litigate a motion to suppress the search and seizure of Hand's cellphone and its contents.  (Doc. 394 at 4-5.)  Hand has also filed a motion for discovery seeking the government's case file or, alternatively, "any and all documents related to plea offers and/or negotiations with [his] trial counsel."  (Doc. 397 at 3-6.)  The government opposes Hand's motion for discovery, moves to dismiss Hand's claim concerning the suppression motion under the fugitive disentitlement doctrine, and further responds that both grounds for relief lack merit.  (Doc. 399 at 9-23.)  Hand replies that the fugitive disentitlement doctrine does not apply to ground two and that his allegations entitle him to an evidentiary hearing and discovery.  (Doc. 402.)

The government replies, reasserting its argument that the fugitive disentitlement doctrine should apply to this case.[1]  (Doc. 403.)

**II.     Motion for Discovery**

A § 2255 movant "is not entitled to discovery as a matter of course." *Prada v. United States*, 692 F. App'x 572, 574 (11th Cir. 2017) (per curiam).  However, the Court "may, for good cause, authorize a party to conduct discovery." Rule 6(a) of the Rules Governing Section 2255 Proceedings.  Good cause exists where "specific allegations . . . show a reason to believe that the [movant] could, with fully developed facts, demonstrate he is entitled to relief." *Prada*, 692 F. App'x at 574 (citation omitted).  "A party requesting discovery must provide reasons for the request . . . and must specify any requested documents." Rule 6(b) of the Rules Governing Section 2255 Proceedings.

The Court finds that Hand has failed to establish good cause for the discovery he seeks.  Hand's request for the government's entire case file is overbroad, as the case involved multiple defendants and could contain privileged materials.  As to Hand's request for "any and all documents related to plea offers and/or negotiations

---

[1] Because the Court finds that Hand's grounds for relief lack merit, this report and recommendation does not address the government's argument regarding the fugitive disentitlement doctrine.

with [his] trial counsel," he fails to show that he could not obtain these documents, if they exist, from the person to whom any such offer was conveyed, i.e., his trial attorney. Moreover, the government states that it did not find any plea offer for Hand in either the electronic case file or "what remains of the paper file" and that any pre-trial emails between the prosecutor and Hand's trial counsel no longer exist. (Doc. 399 at 23-24, n.6.) Hand has submitted appellate counsel Finlayson's affidavit describing a conversation he had with Assistant United States Attorney William Thomas, who stated that, although he "had not reviewed the file," he believed, based on "the posture and relative culpability of the parties, and the [government's] practices . . . at the time," that the government had offered Hand less than ten years. (Doc. 402-2.) Such speculation is insufficient to rebut the government's statement that it found no such offer in its case file. In any event, even if discovery revealed that a plea offer was conveyed to trial counsel, Hand cannot establish that he is entitled to relief on his claim that counsel provided him ineffective assistance by failing to convey the offer because, for the reasons discussed in Section IV.A., he cannot show prejudice. Accordingly, Hand's motion for discovery [397] is **DENIED**.

### III.  Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the

8

sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's

9

performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no competent lawyer would have taken the action that his lawyer took. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

**IV.   Analysis**

   A.   Counsel's Alleged Failure to Convey a Plea Offer

Hand first contends that Taylor failed to convey a plea offer from the government, which Hand would have accepted had he been aware of it. (Doc. 394 at 4.) However, Hand has not presented sufficient evidence to show that such an

10

offer existed but merely speculates that it did, and the government did not find any plea offer in what remains of its case file. (Doc. 399 at 23-24, n.6.) Thus, Hand cannot show deficient performance by Taylor for failing to convey an offer that was never made.

Even if such an offer existed, Hand fails to show prejudice. In order to establish prejudice based on counsel's alleged failure to advise him of a plea offer, Hand must show that

> there is a reasonable probability that the plea offer would have been presented to the court ( i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Hand merely speculates that the government made a plea offer and does not allege the details of any such offer or assert that it would have resulted in a lower sentence. Such speculation does "not warrant relief." *Williams v. United States*, No. 17-11060-J, 2017 WL 8223627, at *4 (11th Cir. Sept. 27, 2017) (citation omitted) (affirming district court's denial of claim that trial counsel was ineffective for failing to advise movant to consider a plea offer where movant "did not present any evidence that the government offered him a plea deal, and there is no indication in the record to support such a

contention"); *see also Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (per curiam) (concluding that movant failed to demonstrate prejudice based on counsel's allegedly erroneous advice regarding whether to plead guilty, where defendant did not "disclose the details of his alleged plea offer"). Moreover, Hand's after the fact statement in his § 2255 motion that he would have accepted a plea offer is insufficient to show prejudice. *Cook v. United States*, 189 F. App'x 927, 931 (11th Cir. 2006) (per curiam). Accordingly, Hand is not entitled to relief on ground one.

B.  Counsel's Failure to Pursue a Motion to Suppress Evidence

Next, Hand argues Taylor provided him ineffective assistance by failing to litigate a motion to suppress the search and seizure of his cellphone and its contents. (Doc. 394 at 5.) Even if the Court would have granted a motion to suppress the cellphone evidence, Hand cannot show prejudice. The evidence recovered from the cell phone revealed only that Hand had called Oliver's telephone four times after police arrived at the June 16, 2001 drug deal. (Doc. 382 at 27-30.) The remaining evidence against Hand was overwhelming, including his co-conspirators' testimony concerning his role in the conspiracy. For example, testimony presented at trial revealed that Hand transported marijuana for Oliver, assisted him in breaking down the large bundles of marijuana into smaller amounts for distribution,

stored marijuana for Oliver, and agreed to, and actually did, participate in the June 16, 2001 drug deal in order to pay off a debt he owed Oliver for his cousin's theft of marijuana Hand was storing for Oliver. (Doc. 380-2 at 52, 58; Doc. 381-1 at 10-13; Doc. 381-2 at 27-29, 31-32.)  Furthermore, law enforcement observed Hand conducting counter-surveillance during the June 16, 2001 drug deal, and Johnson fled. (Doc. 380-1 at 51-53, Doc. 380-2 at 1, 6-11; Doc. 381-1 at 45-48, 51-57, 59, 75-80.)  Therefore, Hand has not shown a reasonable probability that the outcome of his trial would have differed had the cellphone evidence not been presented, and he is not entitled to relief on ground two.

## V.     Certificate of Appealability

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability ["COA"] under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here because, based on the foregoing discussion of Hand's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason.

## VI.  Conclusion

For the foregoing reasons, Hand's motion for discovery [397] is **DENIED**, and the undersigned **RECOMMENDS** that his § 2255 motion [394] and a COA be **DENIED** and that civil action number 1:20-CV-0130-CAP-LTW be **DISMISSED**.

**SO ORDERED AND RECOMMENDED** this  6  day of  April , 2020.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE