UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEEMIT HAND,<br><br>　　　　Movant,<br><br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | CRIMINAL ACTION NO.<br>1:01-CR-0513-4-CAP<br><br>CIVIL ACTION NO.<br>1:20-CV-0130-CAP |

**O R D E R**

This action is before the court on the magistrate judge's report and recommendation ("R&R") [Doc. No. 404]. The movant has filed objections thereto [Doc. No. 406] and a motion to amend his § 2255 motion [Doc. No. 407].[1]

**I. Standard of Review**

In reviewing a magistrate judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed

---

[1] The motion to amend the § 2255 was filed out of an abundance of caution to address an omission by the movant in his original motion: an allegation that a plea offer, if accepted, would have resulted in a lower sentence. Because the court determines that the movant has failed to show deficient performance of counsel, the ineffective assistance claim is resolved without consideration of the prejudice prong. Therefore, the allegation regarding a lower sentence is moot.

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation and internal quotation marks omitted). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b).

## II. Discussion

### A. Background[2]

A federal grand jury in the Northern District of Georgia returned an indictment against the movant and co-defendants Corey Walker, George Oliver, Vincent E. Johnson, Jay Cucco, and J.B. Cucco, charging them with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii), and possession with intent to distribute at least 5 kilograms of cocaine, in violation of §§ 841(a)(1) and (b)(1)(A)(ii) and 18 U.S.C. § 2 [Doc. No. 1]. The movant, represented by retained counsel Beverly Taylor, and his co-defendant Oliver proceeded to a three-day jury trial [Doc. No. 380-82].

The evidence presented at trial showed that, on June 13, 2001, law enforcement raided a house belonging to Eric Staples's mother [Doc. No. 380-2 at 36-37]. Staples, who was present during the raid, agreed to cooperate with the government and described the illegal drug operation as follows [*Id.*]. The customary method of delivery was for a tractor-trailer to drop off either marijuana or cocaine at Metro Materials, a fenced-in gravel yard on the outskirts of Atlanta [*Id.* at 43-56; Doc. No. 380-1 at 52; Doc. No. 381-1 at 86-87]. Walker then took possession of the drugs, and Oliver picked them up for

---

[2] There was no objection to the procedural history set forth by the magistrate judge. Finding no error, the court adopts the procedural history from the R&R and has incorporated it into this order.

3

delivery to a location where they were "broken down" into smaller packets for distribution and storage [Doc. No. 380-2 at 43-56; Doc. No. 381-1 at 10-13, 86-90; Doc. No. 381-2 at 23].

During the course of this conspiracy, the movant transported marijuana for Oliver, assisted him in breaking down the large bundles of marijuana into smaller amounts for distribution, and stored marijuana for Oliver [Doc. No. 380-2 at 52; Doc. No. 381-1 at 10-13; Doc. No. 381-2 at 31-32]. The movant owed Oliver money because the movant's cousin once stole marijuana that the movant was storing for Oliver [Doc. No. 380-2 at 58; Doc. No. 381-2 at 31-32].

Staples told the government that his organization would soon receive a load of drugs and arranged for the cocaine shipment to be delivered to Metro Materials on June 16, 2001 [Doc. No. 380-1 at 51-54; Doc. No. 380-2 at 38]. The movant agreed to assist Oliver with this drug deal in order to pay off the debt he owed for the drugs his cousin stole [Doc. No. 381-2 at 31-32]. The government arranged to conduct surveillance in the area on that date and followed the movant's green four-door Nissan Maxima and Johnson's blue Isuzu Rodeo, as those vehicles appeared to be conducting counter-surveillance [Doc. No. 380-1 at 51-53; Doc. No. 380-2 at 6-11; Doc. No. 381-1 at 45-48, 75-80]. At about 5:00 p.m., a tractor-trailer delivered about 150

kilograms of cocaine to Metro Materials [Doc. No. 380-1 at 54-55; Doc. No. 381 at 63; Doc. No. 381-2 at 63]. Meanwhile, Staples called Johnson and told him to go to the Amoco station to act as a lookout [Doc. No. 381-2 at 26].

About an hour after the drugs were delivered, the movant and Oliver arrived in the area, but Oliver became suspicious that some of the vehicles in the area were police officers [Doc. No. 380-1 at 55-56; Doc. No. 381-2 at 27]. While Johnson waited at the Amoco, he received a call from Staples's brother, Chris Person, asking whether he saw a black Expedition in the parking lot that was, in fact, driven by Officer David Noe [Doc. No. 380-1 at 55; Doc. No. 380-2 at 39]. Ten minutes later, Oliver called to ask whether the black vehicle had left, and when Johnson replied that it had, Oliver said that it was following him [Doc. No. 381-2 at 27]. Shortly after this, Oliver instructed Johnson to meet him on a side street leading to Metro Materials because he had decided that the movant should wait outside the entrance in his vehicle as if he had car trouble, while Johnson and Oliver picked up the drugs in Johnson's vehicle [*Id.* at 27-29]. Johnson would then get in the movant's vehicle, so that anyone following would still see two black men in the car [*Id.* at 28]. The movant was present during this conversation between Johnson and Oliver and agreed to the plan [*Id.* at 28-29].

5

After the cocaine was loaded into Johnson's vehicle at approximately 7:05 p.m., police arrived and blocked the exit, and Oliver told Johnson to get out and run, which he did, but the police caught him immediately [Doc. No. 380-1 at 59; Doc. No. 381-1 at 81-83; Doc. No. 381-2 at 29-30]. Meanwhile, the movant was pulled off to the side of the road down the street from Metro Materials and was standing by his open trunk looking in the direction of Metro Materials [Doc. No. 381-1 at 51-54]. Detective Ty Hayes passed the movant, who was looking into his trunk, but when Detective Hayes turned around, the movant appeared to see the detective looking at him, closed his trunk, and began driving away [*Id.* at 52-56]. Detective Hayes followed as the movant drove erratically, and Officer Noe eventually helped Detective Hayes stop the movant's car and arrest him. [*Id.* at 59; Doc. No. 380-2 at 1; Doc. No. 381-1 at 56-57]. When Detective Hayes entered the movant's car, which was still on the road, to move it to a parking lot, he saw the movant's cell phone, seized it, and turned it over to Officer Noe [Doc. No. 381-1 at 57]. The cell phone revealed that the movant had called another cell phone four times between 7:16 and 7:23 p.m. [Doc. No. 382 at 27-30].

On April 5, 2002, the jury found the movant and Oliver guilty on both counts and that each offense involved at least five kilograms of cocaine [Doc. No. 382-4 at 20, 22]. When the movant failed to appear for sentencing on

6

July 23, 2002, the court issued a bench warrant.  *See* Docket Entry dated 07/3/2002.  Nearly fifteen years later, the movant was arrested in Jamaica and extradited to the United States [Doc. No. 339].  On October 19, 2017, the court entered judgment imposing a total sentence of 188 months of imprisonment [Doc. No. 364].  Retained counsel L. Burton Finlayson represented the movant at sentencing [Doc. Nos. 338 and 363].

The movant, still represented by Attorney Finlayson, appealed, arguing that: (1) the court abused its discretion by admitting photographs and testimony about marijuana seized on June 18, 2001; (2) the court erred in admitting the movant's cell phone and its contents, which were seized without a warrant; (3) the evidence was insufficient to support his convictions; (4) the court erred by denying him a mitigating role adjustment; (5) the court erred by applying a two-level firearm enhancement; and (6) his sentence was procedurally and substantively unreasonable.  Br. of Appellant at 37-76 (May 14, 2018), *United States v. Hand*, 758 F. App'x 838 (11th Cir. 2019) (per curiam) (No. 17-14740-H), 2018 WL 2234214, at *19-58.  The United States Court of Appeals for the Eleventh Circuit granted the government's motion to dismiss the movant's challenges to his convictions pursuant to the fugitive disentitlement doctrine but allowed him to proceed with the challenges to his sentence [Doc. No. 399-3 at 2].  On January 11,

2019, the Eleventh Circuit affirmed the movant's sentence. *Hand*, 758 F. App'x at 841.

### B. Motion for Discovery

The movant sought discovery from the government with regard to his claim that his trial attorney failed to convey a plea offer to him [Doc. No. 397]. The magistrate judge denied the motion [Doc. No. 404 at 7-8], and the movant objects. Because the court has conducted an in camera review of the government's file and found no indication that a plea offer to the movant was ever contemplated by the government, there is no need for the discovery sought by the movant. Accordingly, the objections to the magistrate judge's denial of discovery are OVERRULED.

### C. Section 2255 Motion

The movant now collaterally challenges his convictions and sentences. He raises two grounds for relief based on ineffective assistance of trial counsel.

Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a movant must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92; *Bottoson v.*

*Moore*, 234 F.3d 526, 532 (11th Cir. 2000) (stating that the court may resolve an ineffective assistance claim based on either prong).

Under the first prong, a movant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[C]ounsel's conduct is presumed reasonable, [and] a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). To prove ineffectiveness, a movant must show that his attorney's representation "fell outside the wide range of professionally competent assistance." *Id.* at 1314 (internal quotation marks omitted). When evaluating an attorney's performance, the court must be highly deferential and "avoid second-guessing counsel's performance." *Id.* Moreover, when reviewing counsel's performance, the court "must evaluate the reasonableness of counsel's performance from counsel's perspective at the time," not with the distortion of hindsight. *Id.* at 1316.

Under the second *Strickland* prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

9

is a probability sufficient to undermine confidence in the outcome."
*Strickland*, 466 U.S. at 694.

### 1. Failure to convey plea offer

The two-prong *Strickland* test applies to a defendant's claim of ineffective assistance in connection with the rejection of a plea offer. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 140, (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution . . . ." *Frye, id.* at 145. Counsel, however, is not deficient for failing to inform a defendant of a non-existent plea offer. *United States v. Butler*, 118 F. App'x 371, 373 (10th Cir. 2004) ("Failure to inform him of a non-existent plea offer cannot form a basis for an inadequate assistance of counsel claim."). Additionally, "counsel cannot force the state to plea bargain[,]" and counsel does not perform deficiently by failing to plea bargain when the state has not offered a plea bargain. *Zamora v. Dugger*, 834 F.2d 956, 960 (11th Cir. 1987).

To show prejudice, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (alteration in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)) (internal quotation marks omitted). A movant fails to

show prejudice when he does not allege that "he would have accepted a plea of guilt and would not have insisted on going to trial." *Rosin v. United States,* 786 F.3d 873, 878 (11th Cir.) (emphasis added), cert. denied , _ U.S. _, 136 S. Ct. 429 (2015). In addition to a defendant's willingness to plead guilty, a defendant must "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]" *Frye* , 566 U.S. at 147. To show that counsel was ineffective for failing to pursue a plea bargain, a defendant "must show that the prosecutor would have offered a plea, that the court would have approved it, and that he would have accepted it." *Williams v. Crosby*, No. 8:02-CV-965-T-30MAP, 2007 WL 1724944, at *14 (M.D. Fla. June 13, 2007); *see also Adames v. United States*, No. 6:10-cv-1066-Orl-28GJK, 2012 WL 939022, at *1 (M.D. Fla. Mar. 20, 2012) ("The failure to pursue a plea bargain does not demonstrate ineffective assistance of counsel, particularly when there is no suggestion that the prosecutor would have offered one.").

The movant's evidentiary proffer for demonstrating the existence of a formal plea offer or its terms is insufficient to show that a formal plea offer actually existed. *See Asher v. United States,* No. 1:09-CR-0414-WSD-AJB, 2016 WL 11488907 (N.D. Ga. Apr. 15, 2016), report and recommendation adopted, No. 1:09-CR-414-WSD-AJB, 2018 WL 2979926 (N.D. Ga. June 14,

2018) (citing *Duronslet v. Cain*, No. CV-15-4389, 2015 WL 9948220, at *8 (E.D. La. Nov. 25, 2015) (holding that the petitioner failed to meet burden of showing plea offer existed – "there is no affidavit from the prosecutor or defense counsel establishing the existence of such an offer")), report and recommendation adopted, No. CV-15-4389, 2016 WL 366610 (E.D. La. Jan. 29, 2016).  To support his claim that trial counsel failed to communicate a plea offer to him, the movant has presented an affidavit from Attorney Finlayson, who represented the movant in pursuing his motion for new trial and at sentencing.  Ex. B. to Movant's Reply Brief [Doc. No. 402-2].  The March 17, 2020 affidavit describes a 2017 conversation Attorney Finlayson had with the Assistant United States Attorney ("AUSA") who prosecuted the movant in 2001-2002.  According to Attorney Finlayson, AUSA Bill Thomas said "I have not reviewed the file but given the posture and relative culpability of the parties, and the practices of the U.S. Attorney's office at the time, I'm sure we offered Keemit Hand less than 10 years for a guilty plea. He should have taken it."  The movant contends that this "is evidence of an offer."  Reply Brief at 4 [Doc. No. 406].  This court finds to the contrary—an affidavit containing hearsay about speculation by the prosecutor who has not reviewed the case file regarding what happened in a case fifteen years earlier is not evidence of an offer.  Likewise, the fact that the movant's co-defendants

12

were given plea offers—an argument not raised before the magistrate judge—is not evidence that there was an offer made to the movant's trial counsel.

While the movant contends he is entitled to an evidentiary hearing for an opportunity to prove the existence of the plea offer, he has made no proffer of what proof he would present at such hearing. It is true that § 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," but a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006) (citation omitted); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). However, "[a] hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record." *United States v. Mata*, 2011 WL 5080633 (N.D. Fla. Sept. 23, 2011) (citing *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004)); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).

The court, at the movant's suggestion, conducted an in camera inspection of the government's file in this matter. There is nothing contained in that file to indicate that the government even considered making a plea offer to the movant, much less evidence that such an offer was communicated to his counsel at the time. The vague promise "to prove the existence of the plea offer at an evidentiary hearing through testimony and other evidence" is insufficient. Objections at 6 [Doc. No. 406]. Therefore, no evidentiary hearing is warranted in this case.

Because the movant has offered nothing more than conclusory allegations and contentions unsupported by the record with respect to the existence of a plea offer, he has failed to meet his burden of establishing deficient performance by his attorney. Accordingly, the movant's objections to the R&R with respect to Ground One are OVERRULED.

### 2. Suppression of the Movant's Cell Phone (Ground Two)

The second instance of deficient conduct by trial counsel asserted by the movant is her failure to particularize and litigate a motion to suppress evidence that she adopted in this case. The evidence the movant contends should have been suppressed is his cell phone and its contents. The magistrate judge found that even if trial counsel's failure to pursue suppression of the movant's cell phone amounted to deficient conduct, the

14

movant cannot show prejudice. R&R at 12 [Doc. No. 404]. The movant objects, arguing that there is a reasonable probability that the movant would not have been found guilty absent the cell phone evidence.

At trial, the cell phone evidence established that the defendant called another cell phone labeled as "G-O" four times between 7:16 p.m. and 7:23 p.m. on June 16, 2001, a few moments after the police arrived on the scene [Doc. No. 382 at 27-30]. Even without the cell phone showing the four calls to "G-O", the weight of the other evidence of the movant's guilt was more than sufficient. Specifically, Co-Defendant Vincent Johnson testified that the movant was a participant in the June 16, 2001 drug deal [Doc. No. 381-2 at 28-31]. Also, Agent Noe testified that he observed a four-door green Maxima conducting counter-surveillance in the vicinity of the drug transport, and shortly thereafter, the movant was arrested while driving the vehicle [Doc. No. 380-1 at 56-59; Doc. No. 380-2 at 1-6].

It is not enough for the movant to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Here, the movant has offered nothing more than his speculation that the outcome of his trial would have been different if the cell phone evidence had not been presented; therefore, he has failed to meet his burden of establishing

15

prejudice. Accordingly, the movant's objections to the R&R with respect to Ground Two are OVERRULED.

### 3. Certificate of Appealability ("COA")

The magistrate judge recommended that the movant be denied a COA as to the two grounds raised in his § 2255 motion. In his objections, the movant argues he should be given a COA as to both claims.

Section 2253 sets forth the standard a movant must satisfy to obtain appellate review of this court's disposition of his § 2255 motion to vacate:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -
>
> (A) the final order in a habeas corpus proceeding which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c)(1-3). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to

16

deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).

This court finds that the movant's claims raised in his § 2255 are wholly without merit. Accordingly, the movant is denied a COA. The movant may request a circuit judge to issue a COA since this court has denied the same. Fed. R. App. P. 22 (b)(1, 2). "Under the plain language of the rule, an applicant for the writ gets two bites at the appeal certificate apple: one before the district judge, and if that one is unsuccessful, he gets a second one before a circuit judge." *Jones v. United States*, 224 F.3d 1251, 1255 (11th Cir. 2000) (quoting *Hunter v. United States*, 101 F.3d 1565, 1575 (11th Cir. 1996)).

### III. Conclusion

Based on the foregoing, the movant's objections [Doc. No. 406] are OVERRULED, and the magistrate judge's R&R [Doc. 404], as reviewed herein, is ADOPTED as the order of the court.

In addition, the motion to amend the § 2255 motion to vacate [Doc. 407] is DENIED as moot.

The clerk is DIRECTED to close the civil action associated with the filing of the motion to vacate.

SO ORDERED, this 23rd day of July, 2020.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge